UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CURVES INTERNATIONAL, INC.,

      Plaintiff,

v.

SHAPES FITNESS, LLC; COMPLETE
SPIRIT & BODY RESOURCE, LLC;
BONNIE SUE RITTER; and CATHERINE
ANN STAJKOWSI,

      Defendants.
      _____/

Case No. 13-11859
Honorable Thomas L. Ludington

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, DIRECTING COUNSEL TO MEET AND CONFER, AND SETTING HEARING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On April 25, 2013, Plaintiff Curves International, Inc. filed suit against Defendants Shapes Fitness, LLC, Complete Spirit & Body Resource, LLC, Bonnie Ritter, and Catherine Stajkowski. According to the complaint, Plaintiff is the world's largest fitness franchise with approximately 8,000 locations across more than 85 countries. In fact, there is a Curves Fitness Center in every state of America. To sustain growth, Plaintiff offers franchising agreements to those who wish to operate Curves Fitness Centers. Plaintiff has developed a comprehensive franchise agreement that it executes with each franchisee, which establishes a contract for the protection of Plaintiff's proprietary information.

On February 2, 2009, Plaintiff entered into such an agreement with Defendants Ritter and Stajkowski, which permitted them to operate a Curves franchise in Essexville, Michigan. An addendum was executed the same day, which amended part of the original agreement (collectively referred to as the "Franchise Agreement").

Ritter and Stajkowski are each managing members of Defendant Complete Spirit & Body Resource, LLC (CSBR).  On April 9, 2009, Plaintiff, along with Ritter and Stajkowski, executed an Assignment of Franchise Agreement and Guaranty, whereby Ritter and Stajkowski assigned the Franchise Agreement to CSBR and individually guaranteed each of their obligations to Plaintiff.  Afterwards, Defendants began operating the Essexville Curves Fitness Center pursuant to the Franchise Agreement.

Plaintiff claims that Defendants stopped paying the fees required under the Franchise Agreement.  Specifically, Plaintiff asserts that as of March 6, 2013, Defendants owed $13,725.70 in royalty, advertising, and late fees.  *See* Pl.'s Compl. ¶ 23, ECF No. 1.  On that date, Plaintiff notified Defendants Ritter, Stajkowski, and CSBR of the outstanding balance, and of its intent to terminate Defendants' interests and rights under the Franchise Agreement.  According to Plaintiff, to date, no payments toward the outstanding balance have been made.  As a result, Plaintiff terminated the Franchise Agreement.

The Franchise Agreement imposes a number of restrictive covenants upon Defendants that extend for one year after its termination.  Among those covenants are restrictions that prevent Defendants from operating other fitness facilities, or any similar business, within ten miles of any Curves Fitness Facility (including the Essexville franchise location).  Further, for one year after termination of the Franchise Agreement, Defendants may not pursue other Curves Franchises' employees, interfere with any Curves Franchisee's business relationships, divert customers or business from other Curves locations, or use Plaintiff's registered trademarks.

According to Plaintiff, Defendants have violated these restrictive covenants since the Franchise Agreement was terminated in March 2013.  So along with Plaintiff's complaint, it filed an *ex parte* motion for a temporary restraining order and a preliminary injunction.

Federal Rule of Civil Procedure 65 provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Notably, the issuance of a temporary restraining order requires specific facts that clearly show that an "immediate and irreparable injury, loss, or damage" will occur to the movant in the absence of such an order. This is because an *ex parte* temporary restraining order is an "extraordinary remedy." *Fort Wayne Women's Health Org. v. Brane*, 734 F. Supp. 849, 850 (N.D. Ind. 1990). Further, notice to an adverse party is "grounded in the fundamental values of our judicial system." *Amelkin v. McClure*, 74 F.3d 1240, at *5 (6th Cir. 1996) (unpublished).

In the context of preliminary injunctions, courts do not consider all forms of damage to be "irreparable." A "harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *see also Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 579 (6th Cir. 2002) (concluding that, while constitutional injuries may warrant immediate intervention, potential loss of income "does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages").

Yet damages where the nature of the loss is difficult to calculate, such as the loss of customer goodwill or the loss of fair competition through the breach of a non-competition agreement, may not be fully compensable, and are therefore constitute irreparable harm. *Id*. at 511–12; *see also Warren v. City of Athens*, 411 F.3d 697, 711–12 (6th Cir. 2005) (concluding

that a drive-through restaurant showed an irreparable injury where a city erected barricades likely to impose profit losses that would threaten the viability of the business). Here, Plaintiff acknowledges it must demonstrate "irreparable harm" to succeed on its motion.[1] Pl.'s Mot. 5–6, ECF No. 4.

But Plaintiff has not demonstrated the likelihood of harm necessary to enjoin Defendants' actions without notice and before Defendants' appearance. Plaintiff alleges that Defendants' actions will lead to "loss of [Plaintiff's] employees, member goodwill and confidential information and will deprive it from being able to realistically compete in the fitness industry in Essexville, and such harms cannot be readily measured in damages." Pl.'s Mot. 11.

Money damages would be available to remedy the loss of Plaintiff's employees, and it is at least open to question whether the "world's largest fitness franchise" will be unable to compete in Essexville, Michigan — a town of fewer than 4,000 — because of Defendants' conduct. Even if true, however, such harm is compensable monetarily.

Loss of customer goodwill and the use of confidential information, however, represent closer questions because money damages for such injuries may be "difficult to quantify." *Basicomputer Corp.*, 973 F.2d at 511–12. In this case, however, these potential harms do not support "the drastic remedy of granting a temporary restraining order without reasonable notice and a response from" Defendants. *Hacker v. Federal Bureau of Prisons*, 450 F. Supp. 2d 705,

---

[1] Contained in the "Restrictive Covenants" section of the Franchise Agreement is the following provision:

> Franchisee acknowledges and agrees that the damage caused to Curves by Franchisee's violation of any portion of this Section 20 shall constitute irreparable injury for which there is no adequate remedy at law and, accordingly, acknowledges and agrees that Curves may seek enforcement of this Section 20 by temporary restraining order, temporary and/or permanent injunction, and such other legal or equitable relief as may be appropriate.

Pl.'s Compl. Ex. A, at 40. However, despite this provision's language, the Court agrees that Plaintiff must nevertheless demonstrate irreparable harm to succeed on its motion. This is so because Plaintiff has not raised the provision in support of its motion for a temporary restraining order, and accordingly, is not relying on it.

710 (E.D. Mich. 2006). This is evident from the fact that, unlike the plaintiff in *Warren*, Defendants actions do not realistically threaten the viability of Plaintiff's robust business, only its ability to generate revenue for a limited period of time while Defendants appear and respond. This harm can be remedied with monetary damages should Plaintiff prevail. *See Simons Pizza & Subs, LLC. V. Centerplate, Inc.*, No. 11-12470, 2011 WL 2292198, at *2 (E.D. Mich. June 9, 2011) (court concluded harm would not reasonably result in loss of good will or customer base because the plaintiff's business had been established for years).

In addition, the confidential information Plaintiff fears Defendants will capitalize upon — the use of membership lists — threatens similarly limited injury: the loss of potential customers. Such an injury can be fully compensated by monetary means and does not support the issuance of a temporary restraining order.

Notwithstanding the Court's disposition of the request for a temporary restraining order, the Court will entertain Plaintiff's request for a preliminary injunction. Thus, the Court will set the motion for hearing.

Accordingly, it is **ORDERED** that Plaintiff's motion for a temporary restraining order, ECF No. 4, is **DENIED** in part.

It is further **ORDERED** that Plaintiff is **DIRECTED** serve a copy of this order on each Defendant file proof of service on the docket.

It is further **ORDERED** that counsel for the parties is **DIRECTED TO MEET AND CONFER** between **June 1, 2013** and **June 10, 2013** regarding the matters at issue in Plaintiff's motion for a preliminary injunction and any other pending request for relief.

It is further **ORDERED** that a hearing is set regarding Plaintiff's motion for a preliminary injunction, ECF No. 4, on **June 11, 2013** at **2:00 p.m.**

Dated: April 29, 2013                                  s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 29, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS